[Cite as *Cleveland v. Harris*, 2021-Ohio-305.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT**
**COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 108677 |
| v. | : | |
| ERNEST C. HARRIS, | : | |
| Defendant-Appellant. | : | |

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** February 4, 2021

Criminal Appeal from the Cleveland Municipal Court
Housing Division
Case No. 2018 CRB 001309

*Appearances:*

Ernest C. Harris, *pro se.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant, Ernest C. Harris ("Harris"), appeals from the decision of the Cleveland Municipal Housing Court that found him in violation of the terms of his community control sanctions and ordered him to serve 180 days in jail. For the reasons that follow, we dismiss the appeal as moot.

**Factual History**

{¶ 2} Harris's community control was originally imposed because a property associated with Harris, 12826 Marston Avenue, was allegedly in violation of Cleveland's housing code. The property was in disrepair — boarded up, dilapidated, and with multiple other violations. Harris was not paying taxes on the property and multiple individuals were living in the house, many of whom allegedly were using drugs. As a result, neighbors had complained and city officials had gotten involved to petition the Cleveland Municipal Housing Court directly for relief. However, the property in question does not legally belong to Harris; he does not have legal title to the property and states that he does not always occupy the property, instead often living in a homeless shelter. The property previously belonged to Harris's family members who are now deceased. The housing court still imposed community control for the housing code violations, and later found Harris to be in violation, in part, for not remedying the problems with the property.

{¶ 3} On December 19, 2017, Harris was charged for failure to comply with an order of the Cleveland Building Department, a first-degree misdemeanor pursuant to Cleveland Codified Ordinances 3103.25(E). According to Harris, the house had been condemned while he was serving a felony sentence. He returned to the house to help a childhood friend take care of the property, but she passed away before the charges were brought.

{¶ 4} Harris disputed the charges from the start, and the case was continued multiple times at Harris's request. Harris finally appeared for a hearing

on August 30, 2018, at the Cleveland Municipal Housing Court. During the hearing, the judge informed Harris that he was placing him on five years active community control and that Harris was to address the multiple violations at the property. The court was informed by concerned members of the community that multiple people were living in the home and using drugs on the property. Harris admitted that people lived in the home, and that he was attempting to help individuals returning from prison reintegrate into society. Harris also informed the court that he did not permanently live in the property. The judge informed Harris that he could not use the property for a "reentry program," because the property was not zoned for that sort of facility.

{¶ 5} In addition to maintenance of the property, the terms of Harris's community control included the requirement that Harris enter into a payment plan by September 21, 2018, for property taxes, maintenance costs, and utilities. Harris was also required to ask the court's permission before allowing any person to stay at the property. The court also sentenced Harris to 50 hours of court work service. Finally, the court informed Harris that violation of the terms of his community control sanctions could result in consequences, including up to 18 months in jail.

{¶ 6} A status hearing was scheduled for September 27, 2018; Harris failed to appear.

{¶ 7} Harris was arrested on drug charges on January 16, 2019, and was held until a community control violation hearing could be held. Harris appeared before the housing court judge on January 23, 2019.

{¶ 8} On January 23, 2019, plaintiff-appellee the city of Cleveland ("the city"), informed the court that Harris was in violation of the terms of his community control. Harris had failed to make any payments to the city for property taxes, he had failed to complete any court community work service hours, and Harris had allowed individuals to stay at his property without the court's permission.

{¶ 9} The court noted that Harris was convicted of 26 first-degree misdemeanors and that the court could sentence Harris to up to 18 months in jail, but the court chose not to. The court found that Harris had not complied with the terms of his community control; as a result, the court sentenced Harris to 180 days in jail.

**Procedural History**

{¶ 10} Harris instituted this appeal pro se and requested the appointment of counsel, which was granted on June 14, 2019. Counsel filed a motion for a limited remand in order to address sentencing issues that placed the finality of the order in this appeal in question. Specifically, the entry appealed imposed a blanket sentence and did not reflect a separate sentence for each of the 26 counts of conviction. The motion for limited remand was granted and the matter was returned to the Cleveland Municipal Housing Court on November 11, 2019, for further proceedings. The lower court was directed to conform the sentencing entry to what was imposed in open court if separate sentences had been imposed on every count or conduct a resentencing hearing.

**{¶ 11}** In status updates to this court, counsel represented difficulty reaching Harris. The docket further indicates that the remand proceedings were extended due to the trial court's difficulty perfecting service on Harris. On or about February 13, 2020, the Cleveland Municipal Housing Court terminated the term of community control sanctions and the case was closed. On March 2, 2020, counsel reported to this court that while the sentencing issue was not addressed, the trial court had terminated the probation and closed the case. Counsel asserted there was not a final, appealable order in this appeal and that completion of the sentence rendered the instant appeal moot. On March 9, 2020, this court recognized that the case was closed but allowed the appeal to proceed based on the authority that termination of probation does not render an appeal moot when the appellant has suffered a collateral disability or loss of civil rights, citing *Lakewood v. Smyczek*, 8th Dist. Cuyahoga No. 108369, 2020-Ohio-271. The court set appellant's brief deadline for March 26, 2020. On that day, counsel for Harris filed a motion to continue again reporting difficulty contacting Harris.

**{¶ 12}** On December 20, 2019, a second attorney had entered an appearance as "additional counsel" for Harris in this appeal. Both of Harris's counsel filed separate *Anders* briefs that are essentially identical in content. Both attorneys indicated they had little to no contact with Harris despite diligent efforts to reach him. Both attempted to determine Harris's ownership status of property. Appellate counsel were unable to determine whether Harris suffered collateral damage as a result of his convictions and sentence in the Housing Court.

**{¶ 13}** Both attorneys moved to withdraw from the case and the motions were referred to this panel for review. Harris was permitted leave to file a pro se brief by July 6, 2020. After being granted extensions of time, Harris filed a brief on August 6, 2020.

**{¶ 14}** There is no appellee brief in this case.

**{¶ 15}** We initially note that the trial court did not address our jurisdictional concerns on the remand and it remains unsettled whether the trial court ever imposed separate sentences on each count of conviction. Nonetheless, the trial court has terminated Harris's probation and closed the case. Harris has already served his 180 days in jail and Harris has not informed this court of any collateral consequences stemming from his convictions and sentence. We cannot examine whether Harris is suffering any collateral consequences resulting from his community control. Although we are left with significant concerns as to the troubling history of this case, there is no relief this court can grant to the narrow question before us. We dismiss this appeal as moot.

**Law and Analysis**

***Anders* Briefs**

**{¶ 16}** This court has previously provided clear instruction on what a compliant brief under *Anders v. California*, 386 U.S.738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), requires:

> We believe it self-evident that any motion to withdraw as counsel on grounds that an appeal is wholly frivolous must contain a discussion of why the appeal is frivolous. At all times, an *Anders* brief is to support

a motion to withdraw as counsel and, like any other movant, counsel, in these circumstances bears the burden of showing why the motion should be granted. The mere representation that an appeal is frivolous is nothing more than a conclusion that does not carry the burden of showing why the motion to withdraw as counsel should be granted. To allow counsel to do nothing more than list potential assignments of error begs the question of why those potential assigned errors are frivolous.

It is for this reason that a conforming *Anders* brief must refer "to anything in the record that might arguably support the appeal[.]" *McCoy*, 486 U.S. 429, 108 S.Ct. 1895, 100 L.Ed.2d 440, supra. This is the only way in which counsel can show that any argument raised on appeal would lack any basis in law or fact. We therefore find that a complying *Anders* brief must not only state any potential assignments of error that the particular type of case might be expected to involve, it must include a discussion citing relevant law and facts showing why those potential assignments are frivolous.

*State v. Taylor*, 8th Dist. Cuyahoga No. 101368, 2015-Ohio-420, ¶ 8-9.

{¶ 17} Harris has two appellate attorneys on this case — one appointed by this court to represent Harris as an indigent defendant and another attorney who entered an appearance as additional counsel for Harris. Neither attorney strictly complied with *Anders* requirements.

{¶ 18} Counsel must supply this court with a brief that fully examines the record and provides a thorough explanation as to anything in the record that supports an argument on appeal. *Anders* at 744. Both briefs, effectively identical, relayed that Harris has already served his sentence and stated the belief that there were no collateral consequences as a result of his community control violation. Both attorneys stated that Harris is not the owner of the property and therefore could not suffer any collateral consequences. All of this was presented to the court in a few short sentences. This level of analysis is insufficient.

{¶ 19} While our examination of the record led to the same result counsel believed it would, the purpose of appointed appellate counsel is to provide indigent defendants with a full defense, even when submitting an *Anders* brief. That did not occur here. Harris has potentially suffered a grave injustice. A casual examination is insufficient for any indigent client, much less one in Harris's unique circumstances. Nonetheless, counsel's motions to withdraw are rendered moot based on our finding that the appeal is moot.

{¶ 20} Harris's pro se brief presents no assignments of error for our review. Harris did not argue that he has suffered any collateral legal consequence as a result of his community control violation.

{¶ 21} Harris argued that he did not violate the terms of his community control. We are unable to reach the more critical questions of whether Harris should have been charged with community control in the first place. Our record is limited to two brief transcripts of two different hearings: one where Harris was charged for violations of Cleveland's housing code and community control was imposed and another hearing where Harris was sentenced to 180 days in jail for violating his community control. Those transcripts and Harris's pro se brief do not reveal much about the underlying housing code violations.

{¶ 22} A collateral consequence is an adverse legal consequence of a conviction or judgment that survives despite the court's sentence having been satisfied or served. *In re S.J.K.*, 114 Ohio St.3d 23, 2007-Ohio-2621, 867 N.E.2d 408, ¶ 10. Without some collateral consequence to address — when a defendant is

no longer serving his sentence — there is no remedy this court may provide. *State v. Santiago*, 8th Dist. Cuyahoga No. 101612, 2015-Ohio-1301, ¶ 9.

{¶ 23} We have previously found that violating probation does not automatically create a collateral consequence, and that the appellant must provide evidence of a collateral consequences. *Smyczek*, 8th Dist. Cuyahoga No. 108369, 2020-Ohio-271, ¶ 10. As Harris has not presented this court with any evidence of a collateral consequence, has served his sentence, and the court has terminated his probation, we find that there is no remedy we may provide. The appeal is dismissed as moot. Counsel's motions to withdraw are denied as moot.

It is ordered that appellee recover from appellant costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
LISA B. FORBES, J., CONCUR